Case 14-6150, Brian Wall et al. v. Circle C Construction, LLC. Oral argument, 15 minutes per side. Mr. Burrow for the appellant. Good morning. I'd like to reserve two minutes for rebuttal, please. My name is Tim Burrow with the Nashville Bar and I represent Circle C Construction, LLC in this matter. This case is a case of first impression in determining false claims act damages predicated upon the Davis-Bacon Act violation. Circle C contends that the district court erred in two ways. One, in determining that the government was damaged at all. Two, in determining that the damages included the full amount paid for labor for all 13 of Fasetech's workers, even though 8 were stipulated to by the government as being electricians. Also, the court erred in including the cost of materials installed by all 13 Fasetech's workers, Fasetech being a subcontractor of my client Circle C, as well as the cost of the equipment used by all 13 Fasetech workers. And as we know... The idea is it wouldn't have had to pay that if it had known of the violations. Is that correct? That's right. Why isn't that just the answer? Because the regulations do not allow... The Davis-Bacon Act regulations do not allow the withholding of that money, which is what I'll get to in just a minute. They'd have to... The government would be able to pay the deficiency itself to the workers and then they'd have to pay the rest to your client. Right? Under the reg? That's close, but let me go ahead and cover those regulations. The regulations is what the government is relying on and the amount that it withholds. Obviously, the damage, the difference between the amount you paid and what you would have paid had you known the facts. Now, here's what the regulations say in the Davis-Bacon Act. Some are mandatory, say must, and some say may. Here's what is mandatory. Mandatory is 48 CFR 52.222-7. The contracting officer, when someone is underpaid, shall withhold the underpayment of the workers. They may, the contracting officer may withhold more than that, but first must give written notice, this is under the same regulation, and after written notice, then they may suspend further payment until the violation ceases. Now, Ms. Shikes, who is the government's representative for damages, who made all the decisions on what to pay and what not to pay, said that in no case does she withhold anything more than the underpayment of workers, that if she withholds more than that, that she goes ahead and gives the difference back to the contractor. I thought the issue is not so much what would have happened if there had been proper withholding, but whether when you made the claim it was based on true statements. When you submit something, you ask for payment, and when you do it has statements in there that are false, they don't have to make the payment. I don't see why you then have to go back and recreate what would have happened if they'd caught you in time and how much they would have been able to save if they'd caught you in time under the regulations for what you do. If you find out, the argument here is that you were presented with requests for payment that were based on false statements. But what they're asking a refund for has nothing to do with damages to the government, because damages to the government is, it was actually stated by the district court on remand, the government's most, I'm quoting, the government's most obvious injury, however, is that it pays more for construction work to further the Act's labor market support goals. So the operative word there is labor. So the question is, what proof do we have of what that labor number is? In other words, how much did the government pay to further the Act's labor market support goals? If they ask for compensation, how do they ask for compensation? Do they submit a document saying, pay me a voucher or something? Well, they submit invoices stating this is the amount of work that we have done. Those invoices contain undertakings that they've complied with the law, right, that are required for payment. Is that right or wrong? It also includes certification of payroll. Circle C certifies its payroll and FaceTech certifies its payroll. All the subcontractors submit their certified payroll, as well as the Circle C as the general contractor. But ultimately, there is a regulation, 48 CFR 22.406-9C, entitled Disposition of Contract Payments Withheld or Suspended. And ultimately, no matter what happens, the government is required to return all the money to the contractor that it withheld, with the exception of the underpayment of workers. That money is given to the Department of Treasury. And at that point, there is a dispute resolution procedure between the... That all assumes that there hasn't been a false statement, a false claim, right? That's what happens if there is a false claim, Your Honor. If there is a false claim... If they've underpaid, but they never said anything false to the government, they just underpaid, and then they said, oh, government, we're asking for this, but we've underpaid, then all of what you're describing would happen. Is that correct? Yes. But that's not a false statement. The false statement is they didn't say that. They submitted it without saying that. Isn't that different from what should happen if they don't say anything false? It seems to me you're saying they should only have to pay what they would pay if they'd never made a false statement. Well, whether they made a false statement or not, when there's an underpayment of workers, then the government withholds that underpayment. My question is, what are the government's damages? I mean, in the statutory language, what damages has the government sustained? Correct. And so just, you know, I guess to that point, the building's still standing, right? Right. The lights work. Right. The work these men did, they haven't torn it out of the walls for some reason, correct? Correct. So that's there. And so what we have is a situation where there was a false representation made, and what is the harm, in your opinion, that results from that false representation? There is no harm. And or from the underpayment. There is no harm. Well, the government cares about what wages the workers on its projects are receiving. Fair? Yes, that's correct. And, you know, Davis-Bacon Act, that's kind of what it mandates, and if workers on a government building are not receiving the wages mandated by federal law, then I guess that is an injury of some kind to the government. Isn't that fair? If the government paid a premium for those workers to be paid prevailing wages, not premiums. Well, but I think this whole regime assumes that the government wants to pay that premium, and they didn't here because of the false certification. So, I mean, if the government wants to pay that premium, and it fails to because a certification was false, then the government has suffered some harm, probably in the amount of the underpayment. That would be the most. That would be the most. Which in this case is what, $9,000? $9,916. In other words, if that payment is made, the government has made whole, if it paid a premium for the workers to be paid prevailing wages. So at that point, if you guys paid the $9,000, at that point this statutory injury, for lack of a better term, is remedied, the building still stands, the light still works. Are there any other damages in your view? No, there are not. I cannot think of any damages whatsoever. That's all if you think about it that way. If you think about it as the government wants a building that was built in a certain way, and it didn't get a building that was built in a certain way. It got something else. What was specified was what was delivered. The physical building is what it got. Oh, it specified it wanted a physical building that was built by people who were paid wages, certain wages. Normally market actors don't do that, but government does that. And that's the kind of building they wanted. They could have said we want a building with pink paint, or they could say we want a building, and then got one with blue paint, and you could say, well, they should strip the paint off, but it wasn't what they wanted. What they wanted was a building that was built by people who had been paid those wages. That isn't what they got. And a false statement was made as to whether they were getting that kind of a building. You could say that the damages were the payment for the whole building. That is the danger of this case. But they don't. If they said the whole building, then it seems to me you might be able to say, well, then they should give the building back and buy a new building. But instead they've limited it to the electronics, which can't really be stripped out of the building, and so they just want the value. They've just been forced to take something that they didn't want, and there's no practical way to give it back and get another one. So they should get the value of that. I can understand the theory of looking at it the other way, but that theory works just as well, doesn't it? No, Your Honor. To get what they're paid for, they should get the 99.16 at most, $9,916. That makes them whole. Have these workers gotten the $9,000 by somebody at some point? Yes, they would have been made whole, which happened when Facetech paid the $9,000. Has that happened? If that's what the government wanted, and they wanted a building that was built by people that got a certain amount of money, have they gotten that amount of money? Yes, by Facetech paying $15,000, so there are no damages. And, Your Honor, the danger of the precedence here is that by this case, in the future, if there is one worker underpaid, even... Let's say the Pentagon is being constructed, and you have 20 workers who are sort of spread out doing different things in the building, and each of them is underpaid $1,000 over the course of the year because of some mistake, and the contractor falsely certifies that they were paid the proper amount, I guess it's a fortuity that the building here, or the work, is worth $250,000 as opposed to $250 million. Right, $259,000 for the electrical work. But based on this case, in the future, if somebody's building the Pentagon, and there's one worker of each subcontractor that's underpaid, the government, by this case, is entitled to ask for a refund for all workers paid for that subcontractor, all materials supplied, the value of the equipment, times three. And if you do it for every subcontractor, the government gets a free building times three because one worker of each subcontractor was underpaid. You say that, but they didn't ask for the building. They asked for the amount done by that subcontractor, Your Honor. Yeah, but that can't be stripped. You can't give that building back. You can't give that electronic subset of the building back. Some of these precedents, they gave the brake shoes that were not up to standard, they gave them back. So they said, you never gave us anything that we could use. If they give them a whole building, you could say, well, that's different. But it seems to me when they narrow it down to the subset of the electronics, which was significantly to your benefit that they did that, right? No, Your Honor, there was only... You say under their theory they could have withheld for the whole building. If there is an underpayment for each subcontractor, because by this, there was one subcontractor who had workers that were underpaid, so they asked for a full refund for all work done by that subcontractor. So if the landscaper had an underpaid worker, they'd get a full refund for all the landscaping. Same thing for drywall work. Under this parade of horribles, as I understand it, they could just as easily have asked for... They could just as easily have said the false claim for the whole building. It was charged all at once, right? It was charged over the course... It was monthly charges over the course of seven, six years. That could be the next case. Yes, the next case, they could argue we get a free building if we can show an underpayment for one worker of each subcontractor times three, three free buildings. Now, another question... Under this parade of horribles was you wouldn't even need one for each subcontractor. You just put in a bill for the whole building and it contains a false claim in there. You don't have to pay for the whole Pentagon, the argument goes. The government could take that position. But they don't. Well, but this case for sure takes... The logic for not doing that is that if it was the whole building, they could just get another building. If there's an underpayment for each sub. You can't take the electronics out of your building. I mean, that's not economically feasible. But again, to make them whole is to pay the underpayment of the workers and then the government gets what it's paid for. I think my time is up. Thank you. Thank you, Counsel. May it please the Court, I'm Ellen Bowden-McIntyre on behalf of the United States. The Army bargained for full compliance with the Davis-Bacon Act and payroll certification requirements in Circle C's contract. But the Army didn't get what it paid for. Circle C's fraudulent... I mean, they've been paid the 15 grand, so... Respectfully, Your Honor, Mr. Burroughs was incorrect in that what he said was contradicted by the findings of fact that were not clearly erroneous in the District Court's decision in footnote 2. Under the applicable regulations, the Army could have fixed that by following the reg and itself withholding the amount requested, the entire amount, and then paying the underpayment to these workers and then, per the reg, paying the rest of the money to the company that provided $250,000 of electrical work. Respectfully, no, Your Honor. First of all, Circle C hasn't cited any case law to support its position that underpayments could somehow be damages. And the only case law on this... Well, no, they are. I mean, they say they're not damages, as a matter of fact. They do say that, but this Court's prior precedent in this case does not remotely say that that couldn't be the damages. It just wanted more detail and a better comparison of the wages from... not the wages, but the different numbers presented by the parties and also the exclusion of the Tennessee buildings, all of which the District Court applied. The District Court only wanted the Kentucky buildings included as damages, which is now the case. Our opinion says the government is entitled to full damages where it proves it received no value at all. And I would suggest that perhaps the nub of this dispute is whether the government received no value at all for the electrical work that Circle C did. And given the fact that apparently the lights are on there, they work, people are using that electrical work as we speak, it is one of the most remarkable arguments I have ever seen the government make, that that work had no value at all. Your Honor, we respectfully disagree. The fact that the United States still got electrical work, as Judge Rogers has pointed out, does not mean that we can just give it back. And it does not compensate... I'm not talking about giving it back. Why? These lights are on. People are using this electrical system. So how is it, in reality, these are actual damages. We're not in some fairyland. Actual damages. How, in fact, does that electrical work, which is being used presumably right now, have no value at all in the real world? The United States was injured because the United States bargained as part of its contract, which was a condition of payment in the contract, to help American workers and to make sure that it was giving money to a contractor who would pay the right wages to American workers. Okay, I understand. And I understand that the United States wants a certain amount paid to the workers. Okay. Granted. And we need to make sure the workers get that to remedy that underpayment injury. My question is about the lights. Why do the lights have no value when the government is using them now? It's total nonsense, if you ask me. We respectfully disagree, but we would point out, in response to your question, that if a defendant raised an affirmative defense, which it is the defendant's burden to raise, that there was value here, then this Court could properly consider such a defense. But here, Your Honor, Circle C said it is not arguing the value of work in its reply brief on pages 25 and 26. And I am trying to preside here, and I would ask you, please, when someone is asking you a question, we'd be grateful if you would listen to it so we can get an answer from you. Just, if I may interject, because you mentioned affirmative defense, statute makes it your burden to prove your damages. They don't have to plead affirmatively that there were no damages and that it's then their burden to prove that nonexistence. We respectfully disagree, Your Honor. Although, of course, the U.S. did prove its damages, we put on testimony, which the District Court accepted as a fact finding, that the Army would never have paid the affected portion of the electrical work for the Kentucky buildings if they had known about the fraud by Circle C at the time. The harm is that the U.S. didn't get what it paid for because it couldn't get the benefit to the third-party American workers. There is a line of cases, Your Honor, about benefit to third parties and how the government can get the full damages in those situations. Those cases include the Fifth Circuit's decision in Longie as well as the Second Circuit's decision in Van Gorp. But you're still not answering the question, as I understand Judge Kessler's question, of how it is that you calculate the full amount of the damages to be the full amount of what was in fact provided and then, of course, trebled. Because the government did get the actual product that it wanted to have, it just didn't get it at the price it thought it should have been paying. That is to say, it got it for less. So your view is that you measure that by the actual amount of what the government did receive and say it's zero? Yes, Your Honor. Here, the government paid out money that it wouldn't have otherwise paid, and it was a condition of payment, so the government is entitled to contract for things, to put those in its contracts, and then to enforce the terms of its contract when people defraud it, like Circle C. Now here, the government wouldn't have paid that money, so that is the measure of what the government wouldn't have paid. At what point in time? I mean, if we're going to do this sort of but-for analysis as opposed... I mean, the case, our case, you know, says full damages where it proves it received no value. I've beaten that to death. I will set that aside. If we're now going to do an alternative analysis, which is a but-for, what would have happened, you know, but-for the mis-certification? Well, the question arises, at what point in time? I mean, you seem to want to take a snapshot as, you know, upon the moment the certification hits the desk, but in the real world, and again, these are actual damages, so the certification hits the desk. Meanwhile, you have all the work, and in your view, it just ends there? Nothing further happens? There's nothing like what the regs contemplate, where you would pay the workers and then pay the remainder to the contractor? How does it play out from that point? Your Honor, Mr. Burroughs' suggestions about the regulations putting a burden on the government to repay the workers is not accurate. Answer my question, please. I'm asking, I mean, you want to do a but-for analysis, what's going to happen in sort of an alternative scenario? Play it out. I mean, you get the certification. It just ends there? Is that the government's position? Nobody does anything further. Circle C goes away. The government doesn't pay anything, and it just keeps the work. End of story. Well, Your Honor, I'm not sure if you're asking what would have happened if we had known at the time. Is that what you're asking? I suppose. I mean, that's, you know, yeah. All right, Your Honor. If the United States had known about the fraud of the time, then the witnesses for the Army, both Ms. Shikes and also her contract specialist, Ms. Callahan, testified that they would not have paid the affected portion of the contract on the electrical buildings in Kentucky. And the only change would have been if somehow maybe they had then repaid it quickly or something like that. But that didn't happen, and it couldn't have happened because Circle C's fraud caused the government to not find out about the nonpayment. Would they have explained the reason for their nonpayment, perhaps? Well, Ms. Shikes testified that there were two avenues that she could have taken. One is she could have dealt with the contractor herself, and one is she could have sent it to the Department of Labor. She testified that if she had sent it to the Department of Labor, she does not know exactly what would have happened because these are hypothetical situations that could not have happened under the rubric of this case. At some point, is it fair to say that the government would inform the contractor the reason for basically stiffing them on a $250,000 bill? Is that a fair... can we have common ground on that? Yes, Your Honor. Okay, so they get told that, and does it end there, in your view? No, Your Honor, because here we're nine years after the false payrolls, and none of the money has been repaid by Circle C to this day, even after the damages trial. Well, no, I'm not talking about what happened in fact. If we're doing a but-for analysis, what would have happened if the government knew? The government paid the $250,000, but if it knew about the fraud, it wouldn't have paid the $250,000. And your conclusion is, therefore, it gets to keep the $250,000. So the government, in this alternative scenario, when it has knowledge, it informs Circle C, okay, we're not paying you because of the false certification. Is it your view that the parties then sort of walk away from each other and nothing further happens? Nothing is worked out where the workers get paid and some remainder gets paid to Circle C. Is that your position? Ms. Shikes testified in the record that she has no way of knowing what would have happened at that moment. Well, let's just use common sense. I mean, what do you think? Do you think that the government just walks away at that point? I think the government had the opportunity to contract with a different contractor who would have paid the right wages. We've lost that opportunity. Okay, I give up. That's fine. Your Honor, let me say two things, please. One is that if Circle C, and I believe it is Circle C's duty, and Circle C had two bites at the apple here, and it has waived any argument about value. On page 25 and 26 of its reply brief, it says, it is not arguing the value of the work. But if they had properly argued an affirmative defense about the value of the work, then the way it could have worked is that the district court could have considered whether that defense was a substantive, accurate defense, and then the damages, the single damages, the 259 figure would have been trebled, and then under the Supreme Court's decision in Bornstein, the value, if any, could have been subtracted after the trebling occurs. That follows this Supreme Court decision in Bornstein, and it also follows this Court's decision in Echelman, and that is how it could have potentially worked. But here, Mr. Burrow has never argued the value of work, and in fact, that isn't what he argued when this case was first on summary judgment. None of those issues were contained in the remand. This is something that he simply has not argued. He simply argued damages are zero or underpayments. Counsel, I'm troubled by Judge Kethledge's question. It occurs to me that a possible answer, but I'm not sure if it works, would be as follows, but you can adopt it or not. I'm just curious. If the government was buying portable items, let's say computers or something, and they didn't comply with what they asked for because they were built by people who weren't paid adequately, or maybe they were built by prison labor, or maybe they used imports or violated some regulation, what the government then could do when it was certified that that item complied, they could say, we don't want that item. We don't want it because it's an item that we can't use. We don't want it because it was built in a way that's against our principles. We're going to go and buy others, and so we would just never pay you. And you would get the computer back, presumably, but we're just not going to pay. So that seems to me to make sense. In that sense, the computer isn't what the government wanted. The difficulty here is that what it didn't want has already been installed in a building that it does want. It's very difficult to rip it out and send it back. So as a practical matter, it's not the same as the computer that you can just send back. And when you have that situation, the alternative of sending it back isn't there, and so they're left with being forced to take something they don't want, and they shouldn't have to pay for it any more than they should have to pay for it if they could give it back. Does that make sense? Absolutely, Your Honor. The U.S. agrees with all of your analysis. Let me give you another hypo along those lines. Perhaps a distinction. If the government, let's say, contracted to buy military uniforms, and the government has strict policies about the... and they're buying them from a vendor who manufactures them overseas, and the government has strict policies about the treatment of workers who make those uniforms, their working conditions and so on, and the vendor sells the uniforms, they have a certification that the conditions met the statute, and then it turns out, after the fact, that these uniforms were actually manufactured by children working in horrible conditions for 80 hours a week. That would be different, would it not, from a case where there's an underpayment of $9,000? The reason would be you can't remedy with money after the fact the suffering that those children went through in the first example. You can't do it. But if somebody's underpaid $9,000, we can fix that now, and the government's policy injuries, so to speak, can be fully remedied. Isn't that a distinction, perhaps, between these two kinds of cases? Respectfully, no, Your Honor. First, both our cases, and I see your good analogy, which is that a third party, the government was protecting a third party through its contract, but the government loses that ability. Here, it's too late to go and help these workers who were underpaid years ago. Two of the workers testified, Mr. Wall and Mr. McPherson. They said that it hurt them to have to live on a tight budget and try to live on that salary. You can't go back in time and give them that money. Every single day in this line of work, in this job, we remedy monetary injuries with money damages, and those folks might have had the same hardship in paying a bill during the period when they were deprived of money they should have gotten. But the law says that is a remedy, and I just suggest that the government is not being reasonable. When you say that there's no difference between the ability to remedy the $9,000 and the ability to remedy the way the hypothetical kids are being treated, it strikes me as rather unreasonable. Your Honor, respectfully, the United States is being reasonable. We narrowly carved out our damages to the affected work, even though $30 million was paid out to Circle C on this contract, $3 million of which on the Kentucky buildings. Let me say that all the witnesses from Circle C were found to be not credible by the court. Their testimony was totally discredited. The court never made a finding that $99.16 was the amount of the worker under payments. Far from it, the record would have contradicted any such finding because Mr. Cooper, whose testimony was discredited, the subcontractor's owner, stated that he was only analyzing that based on two workers when really the government's witness, Agent Gunter, said there were 13 underpaid workers. So $99.16 isn't the true amount. And Mr. Cooper's records were incomplete because for six weeks he paid the workers with personal pay stubs. He didn't pay them with Fasetech pay stubs, so there's no way to recreate that. And that is what several witnesses testified to. Ms. Shikes testified that she couldn't recreate it. The workers, Mr. Wall and Mr. McPherson testified that they couldn't recreate it. There is no way to go back about 10 years after the fact and find out what these workers should have been paid in 2004 and 2005. The purpose of the False Claims Act is different from the Davis-Facon Act's purpose. Perhaps the Davis-Facon Act would have allowed worker underpayments. That is one potential remedy there. But here we're talking about fraud, not just a simple thing that was not corrected. And Circle C perpetrated that fraud and has continued to perpetrate it and is even now trying to get the court to reconsider liability. Circle C has not accepted responsibility for its fraud. The workers have not been repaid. And the record says that it's impossible to go and recalculate what those wages should have been now. The job for this court is... Fair to say it was less than $250,000? No, Your Honor, because if one were to play this out under the situation of which there were a Davis-Facon Act track for this case instead of the False Claims Act track that began when the QUITAM was filed. If it was administrative, then liquidated damages would have been a remedy. And I can tell the court where that is. And those would have accumulated daily. Counsel, thank you. Your red light is on. I'm sorry, Your Honor. Thank you very much. Here's an analogy. If the workers were not qualified, then perhaps they could get labor returned. Labor. There's no allegation they were not qualified. If Circle C was not licensed or not qualified, they might be able to get a return of labor plus materials plus equipment. There's no allegation they were not qualified. Here's another... I'd like to make a point. There was no opportunity... The logic of those... What difference does all that make? The government wants a certain kind of item. It's not getting it. You say, well, it's different if it's a labor item or if it's a different... It's not the product they wanted to buy. What was specified was what was delivered. Well, no. What was specified is what's delivered and who was paid what for building it before it was delivered. They're both specified. And the government... Maybe the government is crazy. They haven't read economics and they're doing things that are crazy. But they get to do that because they're represented by the public in the Congress. And they go through all those procedures and say, these are the kinds of things we want. We want things that are built by people who are paid under these esoteric regulations. That's what they want. And you can just come in here and say, oh, no, that isn't what they want. But it is what they want. When I said what was specified was delivered, I meant the physical building. No, but it isn't just the physical building that the government wants. So they got one of the two things that were specified, but not the other. They got the building. They didn't get the $9,000. You have to deal with the $9,000 at least. But, Your Honor, there is one point. Circle C, I mean, the government claims that had they known the true facts, they would not have withheld $259,000. First of all, when I asked, how much could have been withheld on any single payment, they didn't know. So they didn't prove that they ever had an opportunity to withhold the $259,000. But the biggest... That's being generous to you because according to you, according to them, they could have just withheld the whole thing. They're trying to figure out... They're trying to parse it down to make it more reasonable. Your Honor... You're saying, well, they didn't do it accurately. The question with this court is once they learned the true facts, they withheld nothing. So why did they withhold nothing when they learned the true facts? For two years after the lawsuit was filed, they kept paying in full. And, Your Honors, I contend that... The contracting officer never believed that Circle C filed a false claim. You sold a car without brake shoes and you said it had brake shoes and then they kept paying and they kept paying later. Then they don't get the false claim for that? Your Honor... They happen to pay for it later? No, the reason... Government, for heaven's sake. The reason they paid is because, and this is in the appendix, what Circle C signed in their certified payroll is different than what the original court said they signed. It's a different document. And if this came out in remand and a manifest injustice will allow this court to do a reversal of the liability. Circle C certifies its payrolls. Also, FaceTec has its certification in the appendix. FaceTec certifies its payrolls. Dorothy Tindall, the accountant for Circle C, who'd been working there 20 years, Circle C has done many, many government projects for 30 years. Dorothy Tindall said that Circle C has never listed an employee of a subcontractor on the certified payroll nor have they ever certified... There's no violation there. There's no false claim, Your Honor. There's no false claim. Read what they signed. Well, but we have already determined that there was a false claim, so we're... that's beyond the scope of our review at this point. Counselor, your red light is on and I think we do have your arguments in hand. The case will be submitted. Thank you. Clerk may call the next case.